UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| HARLAN FISHER, ) | |
| ) | |
| Plaintiff, ) | |
| vs. ) | 4:11-cv-00113-RLY-DML |
| ) | |
| MICHAEL J. ASTRUE, Commissioner ) | |
| Social Security Administration ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON JUDICIAL REVIEW**

This matter is before the court for judicial review of a decision of the Commissioner of Social Security ("Commissioner") denying Harlan Fisher's ("Fisher") application for a period of disability insurance benefits ("DIB") under Title II of the Social Security Act ("Act"). Fisher filed his application for DIB on March 21, 2008. His application was denied initially on July 24, 2008, and again upon reconsideration October 21, 2008. A hearing was requested by Fisher and the same took place on March 11, 2010. Following that hearing, the assigned administrative law judge ("ALJ") issued his opinion denying benefits on June 18, 2010. The foregoing became the final decision of the Commissioner when the Appeals Council declined Fisher's request for review on August 5, 2011, prompting the filing of this action on September 23, 2011. Subsequent to the filing of this action, Fisher filed a second application for DIB with the Social Security

Administration, which application led to the Commissioner's favorable finding that Fisher was disabled as of August 6, 2011.  Fisher continues to pursue this action in hopes of obtaining benefits for disability between March 21, 2008, and August 6, 2011.

## I. APPLICABLE LAW AND STANDARD OF REVIEW

In order to qualify for disability benefits under the Act, Plaintiff must establish that he suffers from a "disability," as defined by the Act.  The Social Security Regulations provide a five-step sequential inquiry to determine whether a plaintiff is disabled:

1. is the plaintiff currently unemployed;

2. does the plaintiff have a severe impairment;

3. does the plaintiff have an impairment that meets or equals one of the impairments listed as disabling in the Commissioner's regulations;

4. is the plaintiff unable to perform his past relevant work; and

5. is the plaintiff unable to perform any other work in the national economy?

C.F.R. §§ 404.1520; *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351–52 (7th Cir. 2005).  An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled.  20 C.F.R. § 416.920; *Briscoe*, 425 F.3d at 352; *Stein v. Sullivan*, 892 F.2d 43, 44 (7th Cir. 1990).  A negative answer at any point, other than step 3, stops the inquiry and leads to a finding that the claimant is not disabled.  20 C.F.R. § 404.1520; *Stein*, 892 F.2d at 44.  The claimant bears the burden of proof through step four; the burden shifts to the Commissioner at step five.  *Briscoe*, 425 F.3d at 352.

An ALJ's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Perkins v. Chater*, 107 F.3d 1290, 1296 (7th Cir. 1997). This standard of review recognizes that it is the Commissioner's duty to weigh the evidence, resolve material conflicts, make independent findings of fact, and decide questions of credibility. *Richardson,* 402 U.S. at 399–400. Accordingly, this court may not re-evaluate the facts, weigh the evidence anew, or substitute its judgment for that of the Commissioner. *See Butera v. Apfel,* 173 F.3d 1049, 1055 (7th Cir. 1999). Thus, even if reasonable minds could disagree about whether or not an individual was "disabled," the court must still affirm the ALJ's denial of benefits. *Schmidt v. Apfel*, 201 F.3d 970, 972 (7th Cir. 2000).

## II.     ALJ's Findings and Plaintiff's Assignment of Error

In the ALJ's written decision of August 5, 2011, he made the following findings of fact and conclusions of law with respect to Fisher's claim for benefits:

1. The claimant met the insured status requirements of the Social Security Act through June 30, 2007.
2. The claimant has not engaged in substantial gainful activity since March 21, 2008, the alleged onset date.
3. The claimant has the following severe impairments: status post left knee meniscus and ACL repair (10/05) and left rotator cuff repair (3/06).

    4.        The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

    5.        After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) with lifting 20 pounds occasionally and 10 pounds frequently; standing or walking 6 hours in an 8-hour workday; sitting 6 hours in an 8-hour workday; should never climb ladders, ropes or scaffolds; has the ability for no more than occasional climbing of ramps and stairs, balancing, stooping, kneeling, crouching or crawling; no more than occasional reaching (occurring very little to up to 1/3 of an hour workday) with both upper extremities; could constantly finger, handle and feel with both upper extremeties; and avoid concentrated exposure to temperature extremes (cold and hot), wetness, vibrations, and hazards (dangerous moving machinery/unprotected heights).

    6.        The claimant is capable of performing past relevant work as a maintenance supervisor. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity.

    7.        The claimant has not been under a disability, as defined in the Social Security Act, from March 21, 2008, through the date of this decision.

Fisher mounts a three-part challenge to the ALJ's determination. He argues first that the ALJ erred by not finding his back pain to be a severe impairment. Next, Fisher claims that the ALJ's determination of his residual functional capacity ("RFC") is fatally flawed. Finally, Fisher contends that the ALJ incorrectly found him capable of performing his past work. After a full review of the record, the court finds no merit in any of Fisher's assignments of error.

### III. Plaintiff's Medical History

In 2005, approximately two and one-half years prior to the date he alleges he became disabled, Fisher suffered a workplace accident while loading a pick-up truck. Fisher worked for a school district as a maintenance supervisor and the incident caused him to suffer both left knee and left shoulder injuries. His knee injury consisted of tears to both his meniscus and anterior cruciate ligament, for which he sought and received surgical reconstruction in October 2005 by Dr. Brent Walz. That surgery was followed by physical therapy. Examination of Fisher's shoulder revealed degenerative changes and a torn rotator cuff, which was also repaired through surgery performed by Dr. Michael Moskal in March of 2006.

Dr. Moskal saw Fisher on June 19, 2006, and marveled at his progress to that date. He also informed Fisher that "... the atrophy of the muscle in front, the subscapularis, will likely not change, even with repair. That is because it has been torn for so long and that muscle changes are permanent." By November 15, 2006, as part of an occupational health assessment requested by his attorney, Fisher reported to Dr. Daniel Wolens that the injury to his knee had improved but he was unable to perform heavy lifting and was limited to walking approximately two blocks. He complained that the shoulder surgery had left him no better off than he had been prior to the surgery, because he could only lift his arms to shoulder level, and only then with considerable difficulty. Fisher reported pain in both shoulders, but stated that he would not seek further surgical intervention on

his right shoulder because of the poor result with his left shoulder.

Dr. Wolens concluded that Fisher had certain work limitations, including: (1) No lifting floor to waist greater than 30 lbs., waste to chest 10 lbs. or over shoulder more than 2 lbs.; (2) no repeated shoulder work; (3) no stooping, squatting, kneeling, or climbing ladders; and (4) no prolonged walking. When he returned to work, his employer allowed Fisher to work from his office at a much lighter level of exertion and did not require him to climb steps or ladders to review the work of those he supervised.

In 2007, as part of the medical examination required for Fisher to obtain a commercial drivers license, Dr. Kelly Grossman noted Fisher's chronic lower back pain and sleep apnea, but stated that the sleep apnea had been treated with a C-pap machine with excellent results and that there was no "other physical impairment compromising Fisher's ability to drive a commercial motor vehicle." In the documentation, which recorded his March 15, 2007, physical examination of Fisher, Dr. Grossman also stated that Fisher had a history, including a shoulder and knee injury, but that he was "currently stable." In May 2007, doctors at the Louisville Veterans Administration Medical Center saw Fisher for foot pain complaints and he was fitted for orthotics, which have controlled his foot pain well.

In March 2008, the school system which Fisher worked for reorganized its maintenance department, the result of which required Fisher to return to the "maintenance

pool" for regular maintenance assignments. However, because he was physically unable to complete regular maintenance assignments, he was forced to leave his employment.

X-rays of Fisher's shoulder and knee at the VA Medical Center in the spring of 2008 showed his left knee within normal limits and no significant degenerative disease in the left shoulder. A consultative exam in June 2008, conducted by Dr. Mehmet Akaydin, resulted in the doctor opining that Fisher was quite capable of performing minimally to mildly physical work, but he also concluded that Fisher should avoid work that requires more than a moderate amount of standing, walking or stair climbing.

In July 2008, the Indiana Department of Disability Determination, in conjunction with his claim for Social Security benefits, completed a RFC assessment and determined Fisher could:

- lift and/or carry 20 pounds occasionally
- lift and/or carry 10 pounds frequently
- stand and/or walk for a total of about 6 hours in an 8-hour day
- sit about 6 hours in an 8-hour day
- never climb ropes, ladders or scaffolds
- occassionally climb ramps or stairs, stoop, crawl, crouch or kneel
- complete limited reaching in all directions

The records from treating physician Gregory Philpott begin with his treatment of Fisher in 2008. Fisher had complaints of lower back pain and elbow pain in November 2008, however, Dr. Philpott found nothing remarkable on physical examination. Even so, he continued Fisher's existing medications and ordered x-rays. X-rays of Fisher's

lumbar and cervical spine taken in December 2008 showed degenerative changes at the cervical spine levels C3 thru C7 with loss of disk height at the C5-C6 level, there was no evidence of subluxation, soft tissues were unremarkable and the lumbar heights and disk spaces were unremarkable.

Fisher pursued further medical care for his back pain with the VA Medical Center in 2009, where again the physical examination was normal.  An MRI scan performed in August 2009 showed mild to moderate degenerative changes and a small central disk protrusion in Fisher's lumbar spine without spinal canal swelling or narrowing.  He started physical therapy in September 2009, but due to an exacerbation of conditions following the first session of therapy he was unable to complete all of the recommended home therapy elements and completed only a few additional physical therapy sessions in October and November 2009.  He later reported a baseline pain level of three out of ten in November 2009 and reported that he was completing most of his home therapy.  At the VA Medical Center, Fisher was strongly encouraged to comply with programming and self-management as taught, nevertheless the records report that there was a mutual agreement that he was  "set in his ways" at his age and unlikely to pursue any more therapy than he already had.

Other than for medication refills and treatment for head congestion, Fisher's non-VA treating physician, Dr Philpott, did not see Mr. Fisher again before completing a "Medical Statement Regarding Functional Capacity For Social Security Claim" on March

3, 2010.  In that statement, Dr. Philpott concluded that Fisher suffered from only moderate pain, but had the following limitations:

- 30 minutes or less standing at one time
- 60 minutes sitting at one time
- lifting 5 pounds occasionally
- lifting nothing frequently
- bending occasionally
- manipulating either hand occasionally
- working 0 hours per day.

**IV.     Discussion**

At step two of the five-step sequential analysis, the ALJ determined that as a result of Fisher's knee and shoulder injuries he was severely impaired.  The ALJ did not specifically find that Fisher's back pain constituted a severe impairment and Fisher contends that was error.  It was not.

So long as the ALJ has found that the claimant is severely impaired and he continues to consider all imparments, severe and non-severe, at subsequent steps of his sequential analysis, there is no error in not finding a particular impairment to be severe at step two.  *Maziarz v. Secretary of Health and Human Services,* 837 F.2d 240, 244 (6th Cir. 1987); *Blackmon v. Astrue,* 719 F.Supp.2d  80, 91 (D.D.C. 2010).  In this instance, the ALJ did not deny the application at step two, nor did he fail to consider Fisher's back pain as he progressed through the remaining steps of the required analysis.  Indeed, the ALJ considered Fisher's back pain when assessing his RFC for purposes of the step-four

analysis. Consequently, there was no reversible error with respect to any failure to find that Fisher's back pain was a severe impairment. As the Commissioner notes, Fisher's complaint regarding the lack of consideration of his back pain, is really more appropriately encompassed in his objection to the ALJ's RFC assesment.

Fisher asserts that when determining his RFC, the ALJ erred in "placing controlling weight on a flawed state assessment and summarily dismissing the opinion of the claimant's treating physician," Dr. Philpott. An individual's RFC is his ability to perform physical and mental work activities on a sustained basis despite any limitations resulting from his impairments and, in assessing the RFC, an ALJ must consider all of the claimant's impairments. 20 CFR §§ 1520, 1545. So long as there is substantial evidence to support his decision, an ALJ may decide which physician's assessment to believe. *Dixon v. Massanari,* 270 F.3d 1171, 1178 (7th Cir. 2001). An ALJ is not bound by the opinion of the treating physician if there is substantial medical evidence to the contrary. *Books v. Chater,* 91 F.3d 972, 979 (7th Cir. 1996). The Seventh Circuit has instructed:

> When evaluating a conflict between the opinions of treating and consulting physicians, we have held that "the ALJ must take into account the treating physician's ability to observe the claimant over a longer period." Stephens v. Heckler, 766 F.2d 284 (7th Cir. 1985). However, "while the treating physician's opinion is important, it is not the final word on a claimant's disability." Reynolds v. Bowen, 844 F.2d 451 (7th Cir. 1988). We have noted:
>
>> The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability. The regular physician also may lack an appreciation of how one case compares with other related

> cases. A consulting physician may bring both impartiality and expertise.
>
> Stephens, 766 F.2d at 289.  Thus, in the end, "it is up to the ALJ to decide which doctor to believe-the treating physician who has experience and knowledge of the case, but may be biased, or ... the consulting physician, who may bring expertise and knowledge of similar cases-subject only to the requirement that the ALJ's decision be supported by substantial evidence." Micus v. Bowen, 979 F.2d 602, 608 (7th Cir. 1992).

*Id.*

In the case at bar, after reviewing the RFC prepared by Fisher's treating physician, Dr. Philpott, the ALJ chose to credit the reports of other physicians more than Dr. Philpott's report for several reasons.  Dr. Philpott's findings were not consistent with the substantial evidence supporting a finding of non-disability such as:  the reports that his knee and shoulder injuries healed well after surgery (Tr. 147-57, 165-70); the fact that Fisher obtained his CDL truck license in 2007 after Dr. Grossman conducted a thorough examination and found that he had no physical impairments which would compromise his abilities as a commercial driver (Tr. 214-17); the examinations of Fisher's back which were consistently normal (Tr. 322-27, 368, 371); and, that repeated diagnostic imaging of Fisher's back and legs offered no objective support for his complaints of low back pain and numbness in his legs and feet (Tr. 362-67, 373-75, 391).  Indeed, Dr. Philpott only saw Fisher four or five times as a treating physician and at least a couple of those visits were for flu-like symptoms.  Those times that Dr. Philpott examined Plaintiff for his back pain complaints, he found nothing of an objective nature to support the complaints.  In

light of the brevity and limited scope of the treating relationship, the lack of objective findings, and the seemingly exaggerated assertion by Dr. Philpott that Fisher was not capable of any work for even a single hour in a day, it is not difficult to see why the ALJ credited the reports of other doctors over the RFC opinion of Dr. Philpott. In that regard, the ALJ's decision is supported by substantial evidence.

Fisher's final assignment of error addresses the circumstance of his return to work following his accident and the school district's willingness to provide significant accommodations. He contends that because of the significant accommodations provided by his employer, it was inappropriate for the ALJ to take into account those accommodations when assessing whether or not he could return to the position of maintenance supervisor. The accommodations had been significant enough that, according to the vocational expert testifying at the hearing, his position of maintenance supervisor became a skilled sedentary exertion position upon his return to work instead of the skilled light exertion position it had been previously, and which that job is generally recognized to be.

> A person is disabled, and thereby eligible for Social Security disability benefits:
>
> "... only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A). Fisher argues that when he returned to work following his accident, he was provided "makeshift" work and, now that the maintenance supervisor job has been eliminated by the school district, the maintenance supervisor job with such accommodations does not exist in the industry or in the national economy in significant numbers. According to Fisher, this means he cannot return to his same work without switching industries and the vocational expert noted that the job skills were not transferable between industries. In support of this argument, Plaintiff cites to *Kolman v. Sullivan*, 925 F.2d 212 (7th Cir. 1991).

In *Kolman,* the Seventh Circuit rejected an ALJ's determination that a claimant could return to his past work as a "non-intervening security guard," and remanded the matter for further consideration. *Id*. at 214. The plaintiff in *Kolman* had what the medical professionals referred to as an "inadequate personality," which manifested itself in a radical lack of interest in other people, poor personal hygiene, an inability to handle stressful situations and an overly mechanical approach to tasks. He had been discharged from the Air Force after only a few months and then held jobs for short terms as a postal clerk, an industrial security guard and, most recently, as an "information security guide" at a courthouse. The later being a training position he obtained through a federal job-training program. *Id*. at 213.

The Court in *Kolman* found that the description of "non-intervening security guard" was an accurate portrayal of the characteristics of the claimant's past work,

13

despite the lack of any such job title in the Dictionary of Occupational Titles.  It also found that because his last position was only a "nonexistent makework training job," that particular job was not relevant work within the meaning of the regulations.  *Id*. at 213-14.  Because the Dictionary of Occupational Titles does not contain "non-intervening security guard" as a recognized postion, the Court determined that the ALJ needed to take a deeper look into whether real guard-type positions, as opposed to makework positions, existed where the plaintiff's psychological limitations could be accommodated.  *Id*. at 214.  The *Kolman* case was remanded to the ALJ for further consideration, and Fisher seeks, at a minimum, a similar remand.  In part, Fisher insists that further exploration is necessary because of the hearing testimony of the vocational expert, who referred to the accommodations provided to Fisher in order to allow him to remain a maintenance supervisor at the school district as sounding "like a make-shift job to me."  (Tr. 28).

In turn, the Commissioner relies on *Barnhart v. Thomas,* 540 U.S. 20 (2003), a decision which found that 42 U.S.C. § 423(d)(2)(A) establishes two requirements for a finding of disability:  An impairment must render the applicant unable to perform his previous work and must also preclude him from engaging in any other kind of substantial gainful work.  *Id.* at 380.  The phrase "which exists in the national economy" as used in 42 U.S.C. § 423(d)(2)(A), modifies only the second requirement.  *Id.*  Accordingly, despite the fact that a Social Security disability applicant's previous work as an elevator operator was no longer available in significant numbers in the national economy, the

14

Supreme Court determined that the Commissioner's finding that the claimant was not disabled because she could perform her previous work as an elevator operator was a reasonable interpretation of the statute and should be upheld, despite the fact that on occasion such an interpretation may lead to an imperfect application. *Id.* at 382.

This court finds the Supreme Court's analysis in *Barnhart v. Thomas* to be applicable in this circumstance. Fisher's maintenance supervisor job was not a training position, like the position at issue in *Kolman*. It was a position he had held for years, but was discontinued at the school district after a reorganization of the department. It is uncontroverted that Fisher could still perform the job, as he was performing it prior to the school system's decision to reorganize and demote him back to a regular maintenance position. Like the elevator operator in *Barnhart*, the fact that the maintenance supervisor job, with the particular accommodations provided, was no longer available at the school system and may not have been available in the national economy in significant numbers, is not material if it is determined that Fisher could perform his previous work. Furthermore, the *Kolman* case was decided prior to the Supreme Court's decision in *Barnhart*, rendering inapposite *Kolman's* discussion of the rationality of an unfavorable disability determination in the face of the virtual disappearance in the national economy of an applicant's previous job. *See Kolman,* 925 F.2d at 213-214.

## V. Conclusion

There is substantial evidence in support of the ALJ's decision in this case and Fisher has not shown that the ALJ erred in some other manner. Accordingly, judgment shall issue affirming the Commissioner's decision.

**SO ORDERED** this  17th   day of July 2012.

_____
RICHARD L. YOUNG, CHIEF JUDGE
United States District Court
Southern District of Indiana

Electronic Copies to:

Thomas E. Kieper
UNITED STATES ATTORNEY'S OFFICE
tom.kieper@usdoj.gov

Larry J. Schad
SCHAD & SCHAD
lschad@schadlaw.com